# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

QUAN JORDAN,

      **Petitioner,**               **CASE NO. 2:10-CV-34**
                                  **JUDGE JAMES L. GRAHAM**
**v.**                            **Magistrate Judge E.A. Preston Deavers**

**MICHAEL SHEETS, WARDEN,**

      **Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant petition, Respondent's Return of Writ and Supplemental Memorandum in Support, Petitioner's Traverse and the exhibits of the parties. Petitioner's unopposed motion to supplement the record with the documents attached thereto, Doc. 20, hereby is **GRANTED**. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On May 24, 2005, the Franklin County Grand Jury indicted appellant on the following counts involving offenses that took place on April 2, 2005, against two victims who are sisters (we will refer to the victims as "V1" and "V2"): Count 1, aggravated burglary, in violation of R.C. 2911.11; Count 2, kidnapping, in violation of R.C. 2905.01; Count 3, kidnapping, in violation of R.C. 2905.01; Count 4, aggravated robbery, in violation of R.C. 2911.01; Count 5, aggravated robbery, in violation of R.C. 2911.01; Count 6, rape, in violation of R.C. 2907.02; Count 7, rape, in violation of R .C. 2907.02; Count 8, rape, in violation of R.C. 2907.02; Count 9, kidnapping, in violation of R.C. 2905.01; and Count 10, aggravated robbery, in violation of R.C. 2911.01. Each count contained a firearm

specification pursuant to R.C. 2941.145. The rape count in Count 6 contained a sexually violent predator specification pursuant to R.C. 2941.148, and a repeat violent offender specification pursuant to R.C. 2941.149.

Appellant pled not guilty to the charges and specifications. Appellant waived his right to a jury trial on the sexually violent predator and repeat violent offender specifications in Count 6, and, instead, appellant opted to have the trial court determine his guilt on such specifications. A jury trial ensued on the criminal offenses and firearm specifications.

In its opening instructions, the trial court instructed the jury that, "[i]n the event you hear an answer to a question and I've sustained the objection to the question, disregard the question and the answer and don't consider either for any purpose whatsoever." (Vol. I Tr. at 13.) Next, during the trial, plaintiff-appellee, the State of Ohio, called V1 to testify, and she testified to the following. During the early morning hours of April 2, 2005, V1 and V2 were moving into an apartment. V1 was at her car retrieving items when a man, later identified as appellant, offered assistance. V1 declined. During the course of events, V1 opened the apartment door, which the victims had left unlocked, and V2 asked V1 to come upstairs. V1 went upstairs and saw appellant pointing a firearm at V2. Appellant indicated that he wanted $300 and that V2 stated that she did not have any money. V1 offered to write a check, but appellant refused. Rather, appellant wanted the victims to withdraw money at a bank machine from one of their bank accounts. Appellant stated that they would go to the bank machine in V1's vehicle.

Throughout the incident, V1 noticed that appellant "tried not to touch anything. If he had to touch something * * * he would * * * pull his coat to his hands and his fingers so that he doesn't leave prints. He actually said, I don't want to leave any prints behind." (Vol. I Tr. at 37-38.)

While riding to the bank machine, appellant stated that he had been in jail for 20 years for killing someone. At the bank machine, V1 asked if appellant would accept $200 so that she would have enough money for rent. Appellant agreed, but when he saw V1's bank transaction receipt, appellant became upset and stated that V1 had lied. Appellant then stated that they were going to go back to the victims' apartment to figure out how to get the balance of the money.

At the apartment, appellant told V2 to take a shower just as she had planned when he first arrived. V2 complied, and appellant then instructed V1 to take her clothes off, and appellant placed his firearm at V1's head. Appellant forced V1 to perform fellatio, and, during the sexual abuse, V1 spat "out onto the carpet." (Vol. I Tr. at 47.) Appellant then placed his fingers in V1's vagina, and appellant placed the tip of his penis in V1's vagina.

After V2 returned from the shower, appellant stated that they were going to return to the bank machine to get more money. Appellant stated that V1 was to drive her own vehicle and that appellant would drive V2 in his vehicle. At the bank machine, V1 withdrew $200. Next, appellant and V2 approached V1's vehicle, where appellant obtained the money and left the scene.

Subsequently, V1 drove to a gas station and called 911. Appellee played the 911 telephone call recording at trial, and the recording depicted V1 describing the events to which she had just testified. V1 also described appellant, noting that he had freckles on his face. While making the call, V1 stated that she saw appellant. However, V1 was mistaken.

V1 explained at trial why she thought she saw appellant at the gas station. According to V1, "I saw a black male kind of the same height approaching * * *. He was approaching the [gas station] and I thought it was him." (Vol. I Tr. at 71.) V1 further stated: "I was very emotional. * * * When the person came to the [gas station], I realized that it was not him." (Vol. I Tr. at 71.)

Next, V1 testified to the following. Law enforcement took V1 to the hospital, and hospital personnel collected evidence for a rape kit. Afterwards, Columbus Police Detective Kim Foster asked V1 to identify appellant in a photo array. However, V1 could not identify appellant in the photo array. V1 explained at trial, "[a]ll I knew is [appellant] had some freckles on his face. But in the pictures I could not see the freckles on anybody's face. So what I was looking for was the freckles, which I didn't see in the pictures." (Vol. I Tr. at 82.) However, at trial, V1 positively identified appellant as the man who committed the above-described offenses.

Nurse Janet Baatz examined V1 at the hospital after the sexual abuse. Nurse Baatz testified that, when she collected physical evidence from V1's mouth, "there's a chance [she] would [have] miss[ed]" physical evidence that appellant left in V1's mouth, "[b]ut typically" if such evidence is in a victim's mouth, she would obtain it. (Vol. I Tr. at 149.)

V2 testified to the following on appellee's behalf. During the evening of April 1, 2005, V2 and V1 were moving into an apartment. At the early morning hours of April 2, 2005, V2 decided to take a shower while V1 finished bringing a few more items into the apartment. While V2 entered the shower, she saw a man, later identified as appellant, move toward her with a firearm. Appellant put the firearm to V2's head. Appellant stated that he needed money, but V2 responded that she did not have any money. Appellant then told V2 to have V1 come into the apartment. V2 called for V1.

When V1 came into the apartment, appellant stated that they were going to a bank machine and were going to drive in V1's vehicle. At the bank machine, V1 asked if appellant would accept $200 so that she would have enough money for rent. Appellant agreed to accept $200, but, when appellant saw V1's transaction receipt, he became upset and stated that V1 had lied. Appellant then stated that they were going to go back to the victims' apartment to figure out how to get the balance of the money.

At the victims' apartment, appellant told the victims that he was a criminal. He then told V2 to take a shower, just as she had planned when appellant first arrived. V2 took a very brief shower and then saw appellant and V1 in the living room. Appellant was penetrating V1 with his penis. V2 then started yelling. Thereafter, appellant stated that they were going back to the bank machine. V1 drove her vehicle, and appellant drove V2 in his vehicle. While driving to the bank machine, appellant talked about his life in jail and stated that he did not care if he went back to jail. At the bank machine, appellant and V2 exited his vehicle. Appellant obtained the money from V1, and left the scene.

Next, the victims went to a gas station, and V1 called 911. Subsequently, V2 identified appellant in a photo array. Lastly, at trial, V2 testified that the photo array depicted appellant with freckles on

his face.

Detective Foster testified on behalf of appellee that, after law enforcement determined that appellant committed the above-noted offenses, warrants for appellant were filed and appellant's parole officer was contacted. Appellant's trial counsel objected to such testimony, the trial court sustained the objection, and the following exchange took place:

[THE COURT]: Just go ahead and ask another question.

[APPELLEE]: Let me ask you this: At any time did you-

[APPELLANT'S TRIAL COUNSEL]: Your Honor, may we approach?

* * *

[APPELLANT'S TRIAL COUNSEL]: This is a seasoned detective, said he was on parole * * * which means he's been to prison, saying he's been to prison. Now they know he's been to prison. That's grounds for a mistrial.

[THE COURT]: Motion will be overruled. I will be happy to instruct the jury with respect to the last comment.

[APPELLANT'S TRIAL COUNSEL]: The comment has been made and I think the impact is almost impossible-

[THE COURT]: Do you want me to instruct the jury further to disregard the last comment?

[APPELLANT'S TRIAL COUNSEL]: Yeah.

(Vol. II Tr. at 242-243.) Thus, the trial court instructed the jury: "I did sustain the objection to the last question. The jury is to disregard her last comment." (Vol. II Tr. at 243-244.)

On cross-examination, Detective Foster admitted that physical

evidence taken from the victims' apartment did not link to appellant. Detective Foster also admitted that the physical evidence from V1 for the rape kit did not link to appellant.

Before deliberations, the trial court dismissed the kidnapping charge in Count 9 and allowed the jury to deliberate on one kidnapping charge for V1 in Count 3 and another kidnapping charge for V2 in Count 2. As to the kidnapping charge in Count 2 pertaining to V2, the parties stipulated that appellant released V2 in a safe place unharmed, thereby making the count a second-degree felony instead of a first-degree felony pursuant to R.C. 2905.01(C).

After deliberations, the jury found appellant guilty on the remaining charges and firearm specifications. The trial court found appellant guilty on the sexually violent predator and repeat violent offender specifications in Count 6.

On November 23, 2005, the trial court later held a sentencing hearing and sentenced appellant to maximum and consecutive prison sentences. In particular, at the sentencing hearing, the trial court sentenced appellant to ten years imprisonment on the kidnapping charge in Count 2, even though the maximum prison term for the second-degree felony is eight years. See R.C. 2929.14(A)(2). The trial court also stated: "The sentences on Count One, Two and Three are going to run consecutive. Counts Four, Five and Ten are going to run concurrent with each other but consecutive with the other sentences." (Vol. III Tr. at 8.) Additionally, the trial court imposed 20 years imprisonment on the repeat violent offender specification after making particular findings under R.C. 2929.14(D)(2)(b).

Subsequently, the trial court journalized its sentence in a judgment entry, wherein the trial court reiterated that it sentenced appellant to ten years for kidnapping in Count 6, and the trial court referred to the kidnapping offense in Count 6 as a first-degree felony. The trial court also stated in the judgment entry that appellant was to serve the prison sentence for Count 6 consecutive to the other counts, and appellant was to serve the sentences in Counts 7 and 8 concurrently with each other, but consecutive to Counts 1, 2, 3, 4, 5, and 10.

*State v. Jordan*, No. 05AP-1330, 2006 WL 2808173, at *1-4 (Ohio App. 10th Dist. Oct. 3, 2006).

Petitioner filed a timely appeal, in which he raised the following assignments of error:

> 1. Mr. Jordan's convictions are against the manifest weight of the evidence.
>
> 2. The trial court abused its discretion in failing to declare a mistrial after a State's witness revealed to the jury that Mr. Jordan was a convicted criminal.
>
> 3. The trial court committed plain error in convicting Mr. Jordan of felony-one kidnapping on count two, when counsel stipulated that the victim was released in a safe place, unharmed.
>
> 4. The trial court erred in imposing statutory maximum and consecutive terms of imprisonment, in violation of *Blakely v. Washington* and *State v. Foster.*

*Id.* at *5. On October 3, 2006, the appellate court overruled Petitioner's first, second, and fourth assignments of error, sustained his third assignment of error and remanded the case to the trial court for re-sentencing. *Id.* Petitioner filed a timely appeal to the Ohio Supreme Court. *Exhibit 13 to Return of Writ.* On February 28, 2007, the Ohio Supreme Court accepted Petitioner's appeal on his claim that his sentence was unconstitutionally imposed and should have been reversed on direct appeal despite his failure to object and held the case pending a decision in *State v. Payne.* *Exhibit 16 to Return of Writ.* On October 24, 2007, the Ohio Supreme Court affirmed the appellate court's judgment and dismissed Petitioner's appeal on the authority of *State v. Payne,* 114 Ohio St.3d 502 (2007). *Exhibit 17 to Return of Writ.*

On December 15, 2006, the trial court re-sentenced Petitioner to eight years on Count Two, such sentence to run consecutive to the sentences in Counts One and Three; ten years and eight years on Count Eight, such sentences to run concurrent to each other but consecutive to Counts One through Five, ten years on Count Six, and ten years on the repeat violent predator specification, both such specifications to run concurrently with each other but consecutive to the crime of rape, for a

total of twenty years to life on Count Six, which sentence was to run consecutive to all the other sentences imposed. *Exhibit 20 to Return of Writ.* Petitioner filed a timely appeal. He raised the following assignments of error:

> [1.] The trial court was without authority to impose consecutive terms of incarceration, as the sentence violated the Sixth Amendment to the United States Constitution.
>
> [2.] The trial court erred in imposing consecutive sentences on remand as the only statutory authority for imposing consecutive terms was stricken by the Ohio Supreme Court as being unconstitutional in *State v. Foster* (2006), 109 Ohio St.3d 1, 845 N.E.2d 470.

*State v. Jordan*, No. 07AP-52, 2007 WL 2800379, at *1 (Ohio App. 10th Dist. Sept. 27, 2007). On September 27, 2007, the appellate court affirmed the trial court's judgment. *Id.* On January 23, 2008, the Ohio Supreme Court denied leave to appeal and dismissed Petitioner's appeal as not involving any substantial constitutional question. *Exhibit 28 to Return of Writ.*

Petitioner also pursued post conviction relief.

> [O]n July 5, 2006, appellant, acting *pro se,* filed a petition for post-conviction relief, asserting ineffective assistance of counsel. The trial court denied appellant's motion on November 6, 2006. Appellant then filed a motion for delayed appeal on December 15, 2006, which this court denied on January 18, 2007. Thereafter, on January 30, 2007, this court found that the trial court's November 6, 2006 entry was not a final appealable order.
>
> In November 2008, appellant filed with the trial court a motion for relief from judgment pursuant to Civ.R. 60 and Crim.R. 57. In that motion, appellant argued that the indictment was structurally defective, relying upon the Supreme Court of Ohio's recent decision in *State v. Colon,* 118 Ohio St.3d 26, 2008-Ohio-1624 (" *Colon I* "). The state opposed appellant's motion.
>
> By decision and entry filed November 14, 2008, the trial court denied appellant's petition for post-conviction relief filed in July 2006, as well as his motion for relief from judgment filed on November 8, 2008. Appellant appeals, setting forth the following assignments of

error for this court's review:

I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN REFUSING TO CONDUCT AN EVIDENTIARY HEARING ON THE PETITION FOR POST-CONVICTION RELIEF, DEPRIVING APPELLANT OF DUE PROCESS OF LAW.

II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN APPLYING RES JUDICATA TO APPELLANT'S INEFFECTIVE COUNSEL CLAIMS, ALL OF WHICH RELIED SOLELY UPON EVIDENCE DE HORS THE RECORD, DEPRIVING APPELLANT OF DUE PROCESS OF LAW.

III. THE TRIAL COURT ERRED IN FAILING TO ADDRESS EACH OF THE GROUNDS FOR RELIEF AND THE EVIDENCE SET FORTH IN THE PETITION, DEPRIVING APPELLANT OF DUE PROCESS OF LAW.

IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN REFUSING TO GRANT RELIEF BASED UPON APPELLANT'S DEMONSTRATION OF INEFFECTIVE COUNSEL AND ACTUAL INNOCENCE, AND THE PREJUDICE RESULTING FROM SUCH INEFFECTIVENESS, AND BY JUROR MISCONDUCT.

V. THE TRIAL COURT ERRED IN REFUSING TO GRANT RELIEF FROM THE JUDGMENT OF CONVICTION ON A CHARGE THAT WAS NEVER PROPERLY ALLEGED.

*State v. Jordan*, No. 08AP-1074, 08AP-1075, 2009 WL 1263653, at *1-2 (Ohio App. 10th Dist. May 5, 2009). On May 5, 2009, the appellate court affirmed the trial court's judgment. *Id*. On August 28, 2009, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *Exhibit 58 to Return of Writ*.

On January 12, 2010, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds:

    1.    Petitioner was deprived of due process of law by the state

exposing the jury to a recitation of his prior record for a similar offense.

The prosecution elicited testimony regarding the fact that the Petitioner had previously served a prison term for a sexual offense in a trial for, *inter alia*, rape charges. The trial court refused to order a mistrial on proper request therefore.

2.      Petitioner was deprived of his right to a fair trial by an impartial jury by the systematic exclusion of black jurors at trial.

Black jurors were included in the venire, but were excluded by the prosecutor's challenges and the prosecutor did not offer a race neutral reason in violation of *Batson v. Kentucky*.

3.      Petitioner was deprived of due process and a fair trial by the trial court instructing the jury that it could consider the defendant's decision not to testify during its deliberations.

The jury instructions included an instruction which permitted the jury to consider the defendant's decision not to testify at trial.

4.      Petitioner's Confrontation Clause rights were violated by the admission of impermissible hearsay evidence.

The trial court permitted the introduction of hearsay testimony at trial, which violated the Confrontation Clause.

5.      Petitioner was deprived of the effective assistance of counsel.

At trial, trial counsel repeatedly failed to raise proper objections to unconstitutional procedures, abandoning the adversarial testing process and prejudicing the outcome of the proceedings.

6.      Petitioner was deprived of the effective assistance of counsel on initial direct appeal as of right.

Appellate counsel failed to raise significant and

obvious issues of constitutional magnitude with reasonable probability of success, including a "*Batson*" issue; improper instructions to the jury that improperly permit consideration of the defendant's decision not to testify during deliberations; ineffective trial counsel for failing to raise proper objections to the prejudice of the defense; and Confrontation Clause violations by inclusion of inadmissible hearsay, thereby prejudicing the results of the appeal as well as adversely affecting proper exhaustion and preservation for federal review of the extant issues.

7.    Petitioner was deprived of due process of law by the increase in the statutory maximum penalty effected by *State v. Foster's* unconstitutionally overbroad severance, which amounts to judicially-legislated Ex Post Facto effect law, and resulted in an unconstitutional increase in sentence.

The presumptive statutory maximum sentence available in this case, based upon the failure to allege the additional elements necessary to elevate it, is concurrent terms totaling three years, independent of any unaffected specifications.

The trial court upon initial sentencing, unconstitutionally exceeded that sentence. The sentence was reversed on other grounds, and was again exceeded under the premise that the decision in *State v. Foster* permitted the trial court to impose any sentence it may want to impose irrespective of the failure to allege the necessary elements in the indictment or prove them beyond a reasonable doubt.

This increases the otherwise presumptive statutory maximum penalty and because the Ex Post Facto effect was effected by the judiciary, it constitutes a due process violation.

8.    Petitioner was deprived of due process of law by the imposition of consecutive sentences on resentencing in the absence of any statutory authority to vest subject matter jurisdiction in the trial court to do so.

9.    Petitioner's right to indictment by a grand jury, and to due

process and equal protection of the law was violated by a conviction being entered based upon an indictment that fails to properly charge an offense.

10. Petitioner was deprived of the effective assistance of counsel at trial where counsel failed to file a notice of alibi and failed to present the testimony of three alibi witnesses at trial.

It is the position of the Respondent that Petitioner's claims are procedurally defaulted and without merit.

## PROCEDURAL DEFAULT

Respondent contends that Petitioner has procedurally defaulted claims two through five by failing to present these claims on direct appeal. In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If the petitioner fails to do so, but the state still provides a remedy to pursue, his or her petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Coleman v. Thompson,* 501 U.S. 722, 731 (1991); *Deitz v. Money,* 391 F.3d 804, 808 (6th Cir. 2004). If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also waives the claims for purposes of federal habeas review unless he or she can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman*, 501 U.S. at 724; *Murray v. Carrier,* 477 U.S. 478, 485 (1986).

In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default is a bar to a habeas petitioner's claims. *Maupin v. Smith,* 785 F.2d 135, 138 (6th

Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x. 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). Specifically, the United States Court of Appeals for the Sixth Circuit requires the district courts to engage in the following inquiry:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Maupin,* 785 F.2d at 138 (internal quotations omitted). Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his claims on the merits if he establishes: (1) a substantial reason to excuse the default and (2) that he was actually prejudiced by the alleged constitutional error. *Id.* 'Cause' under this test "must be something *external* to the petitioner, something that cannot fairly be attributed to him[;] . . . some factor external to the defense [that] impeded [] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level or failure to appeal at all. *Id* at 750.

Nevertheless, "'[i]n appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray*, 477 U.S. at 495 (quoting *Engle v. Isacc,* 456 U.S. 107, 135 (1892)). Petitioners who fail to show cause and prejudice for procedural default may nonetheless receive a review of their claims if they can demonstrate that a court's refusal to consider a claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Lott v. Coyle,* 261

F.3d 594, 601–02 (6th Cir. 2001) (same). The fundamental miscarriage of justice exception requires a showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

In claim two, Petitioner asserts he was denied a fair trial because the State elicited testimony regarding Petitioner's prior prison term for a sexual offense. In claim three, Petitioner asserts that he was denied a fair trial because the trial court instructed the jury it could consider Petitioner's decision not to testify during jury deliberations. In claim four, Petitioner asserts that he was denied a fair trial by improper admission of hearsay testimony in violation of the Confrontation Clause. In claim five, Petitioner asserts that he was denied the effective assistance of trial counsel because his attorney failed to raise a claim under *Batson v. Kentucky,* 476 U.S. 79 (1986), and failed to object to improper jury instructions or the alleged Confrontation Clause violation. All of these claims, being readily apparent from the face of the record, should have been raised on direct appeal, but were not. Further, Petitioner may now no longer present such claims to the state courts under Ohio's doctrine of *res judicata*. *State v. Cole,* 2 Ohio St.3d 112 (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry,* 10 Ohio St.2d 175 (1967). Moreover, Petitioner did not properly preserve any of his claims for federal habeas corpus review by raising his on-the-record claims, in the first instance, in his appeal to the Ohio Supreme Court. It is well settled that Ohio Supreme Court does not ordinarily consider claims not raised in the appellate court below. *See Brown v. Voorhies*, No. 2:07-CV-00014, 2009 WL 1878305, at *8 (S.D. Ohio Jan. 26, 2009)(citations omitted). The state courts were never given the opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default. This Court deems the first and second parts of the *Maupin* test to have been met.

The Court must next decide whether the procedural rule at issue constitutes an adequate and independent basis upon which to foreclose review of the petitioner's federal constitutional claims. This task requires the Court to balance the state's interests behind each procedural rule against the federal interest in reviewing federal claims. See *Maupin v. Smith,* 785 F.2d at 138. The Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell,* 268 F.3d 417, 427-29 (6th Cir. 2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins,* 209 F.3d 486, 521-22 (6th Cir. 2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998). The doctrine of *res judicata* is stated in unmistakable terms in countless Ohio decisions, and Ohio courts have consistently refused, in reliance on that doctrine, to review the merits of claims. *State v. Cole,* 2 Ohio St.3d at 112; *State v. Ishmail,* 67 Ohio St.2d at 16. Further, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. The third part of the *Maupin* test has been met.

Petitioner may still obtain review of his claims on the merits if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violations.

> " '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003).

As cause for his procedural default of claims two through five, and in claim six of this habeas corpus petition, Petitioner asserts the ineffective assistance of appellate counsel. This claim may constitute cause for Petitioner's procedural default, so long as the claim was presented to the state courts and it is not, itself, procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 450-51 (2000).

Petitioner has procedurally defaulted his claim of ineffective assistance of counsel based on his attorney's failure to raise on appeal a claim that the prosecutor improperly exercised a peremptory challenge to excuse the sole African American from the jury. This claim relies on matters not apparent from the face of the record, and therefore should have been raised in post conviction proceedings, but was not. Juror questionnaires have not been made a part of the record,[1]

---

[1] Petitioner requests Respondent to supplement the record with copies of the juror questionnaires for consideration by this Court. *See Traverse.* Rule 7 of the Rules Governing Section 2254 Cases confers on the Court the authority to expand the record with materials relating to the petition; however, a federal habeas court may only consider evidence that was not presented to or considered by the state courts in support of a claim under limited the circumstances set forth in 28 U.S.C. § 2254(e)(2):

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

and nothing in the *voir dire* transcript or record reflects either that Hazel McGuinnis, the juror at issue here, was African American or that the prosecutor improperly removed her from the jury by way of a peremptory challenge. Moreover, trial counsel did not object and the record fails to reflect the reason for McGinnis' removal from the jury. Still, Petitioner failed to raise the issue in post-conviction proceedings. Any attempt by him now to file a successive and delayed post-conviction petition would most certainly be barred under Ohio Revised Code § 2953.23, which provides in relevant part:

> Whether a hearing is or is not held on a petition filed pursuant to Section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:
>
> (1) Either of the following applies:
>
> (a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.
>
> (b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
>
> (2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was

_____

28 U.S.C. § 2254(e)(2). These restrictions apply whether the petitioner seeks to present the new evidence through an evidentiary hearing or expansion of the record under Rule 7. *See Holland v. Jackson,* 542 U.S. 649, 653 (2004); *Samatar v. Clarridge,* 225 F.App'x 366, 374-75 (6th Cir. 2007) (declining to consider affidavit through either evidentiary hearing or expansion of record because the petitioner failed to exercise due diligence in presenting the affidavit first to the state courts). The record fails to reflect that Petitioner has met the requirements set forth in § 2254(e)(2).

> convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

The record fails to reflect that Petitioner can meet any of these standards here. This Court deems the first and second parts of the *Maupin* test to have been met. Time limitations for filing post conviction petitions and the requirement that all available claims be raised at the first opportunity serve the State's interest in finality and timely adjudication of claims and do not rely on or otherwise implicate federal law.

Petitioner has procedurally defaulted his claim of ineffective assistance of counsel based on his attorneys' failure to raise a claim under *Batson*. He likewise has failed to establish cause for his procedural default of this portion of claim five.

This Court will consider the merits of the remainder of Petitioner's claims of ineffective assistance of appellate counsel, which claims have been presented to the state courts, to determine whether Petitioner has established cause and prejudice for his procedural default of claims three through five. The Ohio Supreme Court summarily dismissed Petitioner's appeal. Regardless of whether this Court conducts a *de novo* review, or a more deferential standard of review, the Court reaches the same result.[2]

---

[2] There are three potential standards of review: the deferential standard [or review] provided under § 2254(d); the *de novo* standard, and the "intermediate approach." *See Maples v. Stegall,* 340 F.3d 433, 436 (6th Cir. 2003) (de novo); *Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir. 2000)(discussing alternate standards); *McKenzie v. Smith,* 326 F.3d 721, 726-27 (6th Cir. 2003)(same); *Howard v. Bouchard,* 405 F.3d 459, 467 (6th Cir. 2005) (same). The gist of circuit precedent is that when there is a decision, deference is accorded under § 2254(d) to the state court decision under the "intermediate approach." *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005); *Howard*, 405 F.3d at 467. When there is no decision or "no results," federal review is *de novo. See Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (using a *de novo* standard of review when there was no state court decision on the second prong of the *Strickland* test). When the

## CLAIM SIX: INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner asserts he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that the trial court improperly instructed the jury it could consider Petitioner's failure to testify on his own behalf at trial; that introduction of inadmissable hearsay violated the Confrontation Clause; and that his attorney performed in a constitutionally ineffective manner by failing to object to the foregoing errors at trial.

In this habeas corpus petition, Petitioner raises various claims of ineffective assistance of counsel. In *Strickland v. Washington*, the Supreme Court reiterated that the right to counsel guaranteed by the Sixth Amendment is the "right to effective assistance of counsel." 466 U.S. 668, 686 (1984.) To prevail on a complaint of ineffective assistance of counsel, a petitioner must demonstrate the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

---

state court has failed to articulate a decision or provide a rationale, the district court must distinguish between a situation of "no results" from that of "no reasoning." *Howard v. Bouchard,* 405 F.3d at 467; *McKenzie,* 326 F.3d at 727. As illustrated in *McKenzie,* the "no reasoning" situation occurs when the state court has issued a summary order which fails to explain its reasoning, as opposed to the situation where no state court has "directly addressed the specific issue." In the latter situation there are "no results" for the federal court to defer, and de novo review by the federal court is required. See *Wiggins v. Smith,* 539 U.S. at 534; *McKenzie,* 326 F.3d at 727. *Socha v. Wilson,* 447 F.Supp.2d 809, 819 (N.D. Ohio 2007). Regardless of which standard of review is applied, however, petitioner's claim lacks merit.

*Id.* at 687.

Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky,* 130 S.Ct. 1473, 1485 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. Both standards created by *Strickland* and § 2254(d) are "highly deferential." *Strickland*, 466 U.S. at 689. When *Strickland* and § 2254(d) "apply in tandem," review is "doubly" deferential. *Knowles v. Mirzayance*, 129 S.Ct., 1411, 1420 (2009).

Given the difficulties "inherent" the analysis of whether an attorney's performance was constitutionally deficient,"a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Strickland,* 466 U.S. at 687. Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 692. A petitioner, therefore, must show prejudice in order to prevail on a claim of ineffective assistance of counsel. *Id.* at 693.

To do so, a petitioner must demonstrate that a reasonable probability exists that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because Petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that Petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776, 781-82 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey,* 469 U.S. 387, 396-97 (1985)." "'[W]innowing out weaker arguments on appeal and focusing

on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). The Court of Appeals for the Sixth Circuit has identified the following considerations that the Court must take into account in determining whether counsel on direct appeal performed reasonably competently:

1. Were the omitted issues "significant and obvious?"

2. Was there arguably contrary authority on the omitted issues?

3. Were the omitted issues clearly stronger than those presented?

4. Were the omitted issues objected to at trial?

5. Were the trial court's rulings subject to deference on appeal?

6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7. What was appellate counsel's level of experience and expertise?

8. Did the Petitioner and appellate counsel meet and go over possible issues?

9. Is there evidence that counsel reviewed all the facts?

10. Were the omitted issues dealt with in other assignments of error?

11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir.1999). This list is not exhaustive and need not produce a certain "score." *Id*. at 428.

Thus, to establish cause for his procedural defaults, Petitioner must show both deficient performance on the part of his appellate attorneys and prejudice from that performance. Petitioner has failed to meet this standard here.

Petitioner first complains that the trial court improperly instructed the jury it could consider his failure to testify at trial in determining guilt. The record, however, fails to support his claim. The trial court instructed the jury in relevant part as follows:

> Now, you are certainly all aware of the fact that the defendant did not testify in this case. The decision of whether to testify in a particular case is a decision that's left up to the defendant after consultation with his attorney. There are many reasons why an individual may not testify in a particular case. So the fact that the defendant exercised his right not to testify should not be considered by you for any purpose whatsoever. In doing so he is only exercising his rights that are guaranteed to him under the Constitutions of the United States and the State of Ohio.

*Trial Transcript,* at 312-13. Petitioner argues that the trial court constitutionally was required instead to have instructed the jury it "shall not" rather than "should not" consider his failure to testify during deliberations. This argument is not persuasive. When read in context, the plain meaning of the trial court's instruction conveyed to the jury it was not to consider "whatsoever" Petitioner's decision not to testify on his own behalf in determining guilt.

The record likewise fails to support Petitioner's claim that defense counsel performed in a constitutionally ineffective manner by failing to object to admission of hearsay. Petitioner complains Detective Kim Marie Foster improperly and incorrectly testified that Gregory Reynolds[3]

---

[3] The Detective could not remember Ms. Reynolds' father's first name. The prosecutor mistakenly referred to Ms. Reynolds' as "Gregory Reynolds." Mr. Reynold's first name is "Joseph," not "Gregory."

told her Petitioner used the truck involved in the charges at issue. Detective Foster had made several attempts to contact Petitioner's girlfriend, Rita Reynolds, whose name was registered to the Ford Bronco identified in the offenses charged. *Trial Transcript,* at 239-40. She contacted Rita Reynolds' father, who told Foster "his daughter had a friend who had been using it and his name was Quan.*" Id.* at 240. Contrary to Petitioner's allegation here, defense counsel objected to admission of this statement at trial. The trial court sustained counsel's objection and instructed the jury to disregard the comment. *Id.*

Similarly, the record fails to support Petitioner's claim that he was denied effective assistance of appellate counsel due to his attorney's failure to raise on appeal a claim that Foster's testimony violated the Confrontation Clause. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial. *Illinois v. Allen,* 397 U.S. 337, 388 (1970). In *Crawford v. Washington,* 541 U.S. 36 (2004), the United States Supreme Court abrogated its holding in *Ohio v. Roberts,* 448 U.S. 56 (1980), and re-defined the test for determining whether admission of hearsay statements violates the Confrontation Clause. The Supreme Court in *Crawford* held that testimonial statements of a witness who does not appear at trial are inadmissible unless the witness was unavailable to testify and the defense had a prior opportunity to cross examine the witness. Under *Crawford*, "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination." *Id.* at 1366. The Supreme Court, however, left untouched the application of *Roberts* to cases involving nontestimonial hearsay:

"Where nontestimonial hearsay is at issue, it is wholly consistent

with the Framers' design to afford the States flexibility in their development of hearsay law–as does *Roberts,* and as would an approach that exempted all such statements from Confrontation Clause scrutiny altogether." *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. As the courts applying *Crawford* have observed,

> [t]he lynchpin of the *Crawford* decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in *Crawford* applies only to the former category of statements.... [U]nless a particular hearsay statement qualifies as "testimonial," *Crawford* is inapplicable and *Roberts* still controls.

*Coy v. Renico,* 414 F.Supp.2d 744, 773 (E.D. Mich.2006) (quoting *United States v. Hendricks,* 395 F.3d 173, 179 (3d Cir. 2005)). The Supreme Court declined to define a comprehensive definition of the term "testimonial," but indicated, at a minimum, that term includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Crawford,* 541 U.S. at 68. A causal remark to an acquaintance, business records, and statements made in furtherance of a conspiracy do not constitute testimonial statements within the protection of the Sixth Amendment. *Id.* at 51-55. Further, "admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause. . . . [T]he statement must be used as hearsay– in other words, it must be offered for the truth of the matter asserted." *United States v. Pugh,* 405 F.3d 390, 399 (6th Cir. 2005).

In *Melendez-Diaz,* – U.S. –, 129 S.Ct. 2527 (2009), the United States Supreme Court considered whether a defendant's right to confront his or her accuser was violated when the state introduced the reports of a laboratory analyst, but not the analyst who actually prepared them. The *Melendez-Diaz* Court held that because the affidavit was an out-of-court statement intended for trial,

it was "testimonial" in nature. Thus, the Court held, the state violated a defendant's constitutional right to confront his accuser by not putting the analyst on the stand. *Id*. at 2532. In so holding, the Supreme Court emphasized what it had said in *Crawford* remains true:

> "To be sure, the [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. . . . Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes." [*Crawford*], 541 U.S., at 61–62, 124 S.Ct. 1354.

*Id*. at 2536. Subsequent to the state courts' decision in this case, the United States Supreme Court in *Bullcoming v. New Mexico*, – U.S. –, 131 S.Ct. 2705, 2717 (2011), held that a blood-alcohol breath test report containing the blood-alcohol level of the defendant likewise constitutes a testimonial statement within the Sixth Amendment. The Court again held that a defendant has a right to confront the analyst who certified the blood-alcohol analysis report. *Id*. at 2716.

Here, Respondent argues no violation of the Confrontation Clause occurred because the trial court did not admit the statement. Further, Respondent contends, to the extent Foster later referred to the conversation with Mr. Foster, this testimony was not admitted for the truth of the matter asserted, *i.e.*, it was not offered to prove that Petitioner, in fact, drove his girlfriend's truck to commit the crimes. Respondent contends that the statement was offered instead to establish that, as a result of her conversation with Mr. Reynolds, she obtained information that assisted her with the investigation and her attempts to locate Petitioner's whereabouts. *See Supplemental Memorandum in Support,* at 3-2; *Trial Transcript*, at 240-41. Whether or not Petitioner actually drove the truck that allegedly was used in the crimes, however, constituted circumstantial evidence

of guilt. Moreover, a statement may be deemed to be testimonial within the meaning of *Crawford* "when in the totality of circumstances [a] police interrogation is not in response to an ongoing emergency but rather to investigate past events potentially relevant to criminal proceedings." *Whittaker v. Lalfer*, 639 F.Supp.2d 818, 827 (E.D. Mich. 2009)(citing *Davis v. Washington,* 547 U.S. 813 (2006).

In any event, this Court concludes that any error in admission of Foster's testimony was harmless. On collateral review, an error is deemed harmless unless it "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (*quoting Kotteakos v. United States,* 328 U.S. 750, 776 (1946)). Stated another way, a finding that the error was harmless depends on "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Madrigal v. Bagley,* 413 F.3d 548, 551 (6th Cir. 2005). If the issue is "evenly balanced" such that the Court has "grave doubt" as to the error's harmlessness, it "should treat the error, not as if it were harmless, but as if it affected the verdict." *O'Neal v. McAninch,* 513 U.S. 432, (1995).

Under *Brecht,* whether an error was harmless depends upon a number of factors including "(1) the importance of the witness' testimony in the prosecution's case, (2) whether the testimony was cumulative, (3) the presence or absence of corroborating or contradicting the testimony of the witness on material points, (4) the extent of cross-examination otherwise permitted, and (5) the overall strength of the prosecution's case." *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431 (1986).

Evidence that Petitioner used Rita Reynold's car was not critical to the prosecution's case, particularly in view of the victim's identification of Petitioner as the perpetrator. Further, the trial

court immediately advised the jury to disregard the statement, and the jury is presumed to have followed these instructions.

In sum, Petitioner has failed to establish ineffective assistance of appellate counsel. He likewise has failed to establish cause and prejudice for his procedural defaults.

## CLAIM ONE

In claim one, Petitioner asserts that he was denied a fair trial because the prosecutor elicited testimony that Petitioner had previously served a prison term for a sexual offense. The state appellate court rejected this claim as follows:

> [A]ppellant contends that the trial court abused its discretion when it denied appellant's motion for a mistrial after Detective Foster testified that law enforcement contacted appellant's parole officer. We disagree.

> A mistrial need not be ordered in a criminal case merely because some error or irregularity has intervened. *State v. Nichols* (1993), 85 Ohio App.3d 65, 69. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin* (1991), 62 Ohio St.3d 118, 127. Ultimately, the decision whether to declare a mistrial is within the sound discretion of the trial court. *State v. Garner* (1995), 74 Ohio St.3d 49, 59. An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

> In support of his argument that the trial court abused its discretion in denying appellant's mistrial motion, appellant contends that Detective Foster's statement about appellant having a parole officer inappropriately confirmed that appellant had a criminal record. In general, evidence of an individual's other criminal acts, which are independent from the offense for which the individual is on trial, is inadmissible in a criminal trial. *State v. Wilkinson* (1980), 64 Ohio St.2d 308, 314; Evid.R. 404(B). In this regard, the trial court sustained appellant's objection after Detective Foster referenced appellant's parole officer. However, the trial court refused to declare a mistrial, but, instead, issued a curative instruction.

In *State v. Mobley* (Apr. 5, 2002), Montgomery App. No. 18878, the Second District Court of Appeals concluded that a trial court did not abuse its discretion in denying a defendant's motion for mistrial after a prosecution witness testified to the defendant's arrest on a previous crime. The appellate court noted that the trial court sustained an objection to the reference and gave a curative instruction that admonished the jury to disregard the reference and not use it during deliberations. Thus, in upholding the trial court's decision to deny the defendant's mistrial motion, the appellate court concluded that the trial court's above-noted instruction successfully cured error that stemmed from the witness' reference to the defendant's arrest on a previous crime.

In *State v. Warren* (1990), 67 Ohio App.3d 789, 798-799, the Sixth District Court of Appeals upheld a trial court's decision to deny a defendant's motion for mistrial after a prosecution witness testified to the defendant having a parole officer. The appellate court concluded that a mistrial was not necessary because the trial court immediately issued a curative instruction. *Id.* at 799.

Here, like *Mobley* and *Warren,* the trial court gave a curative instruction after Detective Foster testified to appellant having a parole officer. We find that the instruction effectively cured error stemming from Detective Foster's testimony, initially noting that we presume that jurors follow the trial court's instructions. *State v. Noling,* 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 39. In addition, like *Mobley* and *Warren,* the trial court gave the curative instruction soon after the jury heard the testimony, and we note that the curative instruction tied in with and underscored the trial court's opening instruction that, "[i]n the event you hear an answer to a question and I've sustained the objection to the question, disregard the question and the answer and don't consider either for any purpose whatsoever." (Vol. I Tr. at 13.) Consequently, like *Mobley* and *Warren,* we conclude that the trial court was not required to grant appellant's motion for mistrial because the trial court effectively cured error from Detective Foster's testimony through the instruction.

In so concluding, we reject appellant's contention that the trial court's instruction was vague and ineffective because it did not specify the comment to be disregarded. The record establishes that the trial court's curative instruction sufficiently referenced Detective Foster's testimony that appellant had a parole officer. Specifically, the detective provided no additional testimony before the trial court gave the instruction, and the trial court issued the instruction in the context

of having sustained appellant's objection to Detective Foster testifying that appellant had a parole officer.

Therefore, based on the above, we conclude that the trial court did not abuse its discretion in denying appellant's motion for a mistrial. As such, we overrule appellant's second assignment of error.

*State v. Jordan,* 2006 WL 2808173, at *6-7. The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides as follows:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. As set forth at 28 U.S.C. § 2254(d):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Court of Appeals for the Sixth Circuit has summarized this standard:

Under the "contrary to" provision, a federal habeas court should grant the writ "if the state court arrived at a conclusion 'opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set

> of materially indistinguishable facts.'"*Boykin v. Webb,* 541 F.3d 638,
> 642 (6th Cir. 2008) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-
> 13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the
> "unreasonable applications" clause, a habeas court may grant the writ
> if the state court identified the correct legal principle from the
> Supreme Court's decisions but unreasonably applied that principle to
> the petitioner's case. *Id.*

*Raver v. Brunsman,* 2010 WL 2545489 (6th Cir. June 21, 2010). Petitioner has failed to meet this

standard here.

"Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal

constitutional claims warranting relief in a habeas action unless the error renders the proceeding so

fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."

*McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle v. McGuire,* 502 U.S. 62, 69-70,

(1991)); *see also Coleman v. Mitchell,* 268 F.3d 417, 439 (6th Cir. 2001), (stating in reference to

habeas corpus challenge to admission of other-acts evidence that "[s]tate court evidentiary rulings

do not rise to the level of due process violations unless they offend some principle of justice so

rooted in the traditions and conscience of our people as to be ranked as fundamental.") (internal

quotation marks and citations omitted); *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir.

2000)("Errors in the application of state law, especially rulings regarding the admission or exclusion

of evidence, are usually not to be questioned in a federal habeas corpus proceeding.") (internal

quotation marks and citation omitted).

With respect to the admission of prior bad acts evidence, the Sixth Circuit has found that

there is no clearly established United States Supreme Court precedent holding that the admission

of such evidence violates the Due Process Clause:

> There is no clearly established Supreme Court precedent which holds
> that a state violates due process by permitting propensity evidence in

the form of other bad acts evidence. In *Estelle v. McGuire,* the Supreme Court declined to hold that the admission of prior injury evidence violated due process, thus warranting habeas relief. 502 U.S. 62, 75, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n. 5, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385. Moreover, in *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), the Supreme Court rejected the argument that the Due Process Clause requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose is served. *Id.* at 563-64, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606. The Court recognized that it was not "a rule-making organ for the promulgation of state rules of criminal procedure. And none of the specific provisions of the Constitution ordains this Court with such authority." *Id.* at 564, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not explicitly addressed the issue in constitutional terms. Accordingly, the district court correctly found that there is no Supreme Court precedent that the trial court's decision could be deemed "contrary to," under AEDPA.

*Bugh v. Mitchell,* 329 F.3d 496, 512-513 (6th Cir. 2003).

Accordingly, the Ohio Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law. Claim one is without merit.

## CLAIMS SEVEN AND EIGHT

In claims seven and eight, Petitioner asserts that he was unconstitutionally sentenced in violation of the Ex Post Facto Clause because the trial court imposed maximum consecutive sentences after the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1 (2006). The state appellate court rejected this claim as follows:

After appellant's initial sentencing hearing, the Supreme Court of Ohio issued *State v. Foster,* 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856, in which it declared significant portions of Ohio's statutory sentencing scheme unconstitutional and severed those portions from the statutes. As pertinent here, the court declared unconstitutional and severed R.C. 2929.14(E)(4), which required a trial court to make certain factual findings before it could impose consecutive prison terms. Accordingly, at appellant's resentencing, the trial court imposed consecutive prison terms without making the factual findings required by former R.C. 2929.14(E)(4).

Appellant contends in his first assignment of error that the *Foster* court's severance remedy, as applied to his case, violates due process and ex post facto principles. We disagree. This court has considered and rejected these arguments a No. 07AP-52 number of times. See *State v. Hudson,* Franklin App. No. 06AP-335, 2007-Ohio-3227, at ¶ 25, citing *State v. Gibson,* Franklin App. No. 06AP-509, 2006-Ohio-6899, at ¶ 18, *State v. Pigot,* Franklin App. No. 06AP-343, 2007-Ohio-141, at ¶ 7, and *State v. Sieng,* Franklin App. No. 06AP-852, 2007-Ohio-1502, at ¶ 6. Accordingly, appellant's first assignment of error is overruled.

Appellant contends in his second assignment of error that *Foster,* by severing R.C. 2929.14(E)(4), eliminated the trial court's authority to impose consecutive prison terms. We disagree. This court has also recently considered and rejected this argument. *State v. Worrell,* Franklin App. No. 06AP-706, 2007-Ohio-2216; see, also, *State v. Gonzales,* Hancock App. No. 5-06-43, 2007-Ohio-3132 (applying Worrell); *State v. Taylor,* Fayette App. No. CA2006-09-039, 2007-Ohio-2850 (rejecting same argument). Trial courts have long possessed the inherent power to impose consecutive prison terms, even without statutory authority. *Worrell,* at ¶ 11, quoting *Henderson v. James* (1895), 52 Ohio St. 242, 254-255, 39 N.E. 805. *Foster* did not eliminate this inherent authority to impose such sentences. See *Foster,* at ¶ 99 ("After the severance, judicial fact-finding is not required before imposition of consecutive prison terms."). Accordingly, because the trial court had authority to impose consecutive prison terms, appellant's second assignment of error is overruled.

*State v. Jordan,* 2007 WL 2800379, at *1-2. Again, the record fails to reflect that federal habeas corpus relief is warranted. 28 U.S.C. 2254(d), (e).

In *Hooks v. Sheets*, 603 F.3d 316 (6th Cir. 2010), the United States Court of Appeals for the

Sixth Circuit rejected the argument now presented by Petitioner, at least as it applies to imposition

of consecutive terms of incarceration:

> The Ex Post Facto Clause prohibits a state from passing a law that (1) criminalizes an action done before the law was passed, which was innocent when done, (2) " 'aggravates a crime, or makes it greater than it was, when committed,' " (3) " 'changes the punishment' " to inflict greater punishment than the law provided when the crime was committed, or (4) " 'alters the legal rules of evidence' " so that less or different testimony is required than at the time the offense was committed. *Rogers v. Tennessee,* 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (quoting *Calder v. Bull,* 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798)). The Ex Post Facto Clause, however, provides by its terms that it is applicable only to acts of the Legislature, and " 'does not of its own force apply to the Judicial Branch of government.' " *Id.* (quoting *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)). Nevertheless, the "limitations on ex post facto judicial decisionmaking are inherent in the notion of due process." *Id.* Consequently, the principles of the Ex Post Facto Clause apply to the courts through the Due Process Clause. *See id.* at 457. Because these principles are viewed through the lens of due process in the judicial context, the constitutionality of judicial action turns on the traditional due process principles of "notice, foreseeability, and, in particular, the right to fair warning," rather than the specific prescriptions of the Ex Post Facto Clause. *Id.* at 458-59.
>
> A state's statutory scheme does not violate the Sixth Amendment simply because it constrains the ability of courts to impose consecutive sentences to situations in which the court has found specific facts. *Oregon v. Ice,* 555 U.S. 160, ----, 129 S.Ct. 711, 714-15, 172 L.Ed.2d 517 (2009). Instead, a state may allow courts unfettered discretion to impose consecutive sentences or it may limit that authority without violating the Sixth Amendment. *Id.* At the time Hooks committed his crimes, Ohio permitted the court to impose consecutive rather than concurrent sentences if it found particular facts, *see* ORC § 2929.14(E)(4), and explained its "reasons for imposing the consecutive sentences," ORC § 2929.19(B)(2)(c). The Ohio Supreme Court nevertheless determined that these statutory provisions violated *Blakely* because they allowed the imposition of longer sentences-consecutive sentences-based upon judicial

factfinding. *Foster,* 845 N.E.2d at 491.

Regardless of the court's determination in *Foster,* the maximum sentence to which Hooks was constitutionally subject contemplated consecutive sentences. Hooks would have the court calculate his maximum sentence as being imposed concurrently based solely on the facts found by a jury at the time of sentencing, because he argues that this calculation is mandated by *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). However, *Apprendi* does not limit the calculation of Hooks's potential sentence to concurrent sentences when the judicial fact-finding here is allowed under *Ice.* Thus, Hooks was initially and constitutionally subject to consecutive sentences according to the "guided discretion" of the court. *See Foster,* 845 N.E.2d at 495. Moreover, Hooks was always aware of the potential for consecutive sentences. On re-sentencing post- *Foster* he remained subject to consecutive sentences within the discretion of the court. Since Hooks was *always* subject to consecutive rather than concurrent sentences in the discretion of the trial court, his re-sentencing under *Foster* did not raise ex post facto or due process concerns. We need not reach the broader question of whether re-sentencing under *Foster* ever violates the Due Process or Ex Post Facto Clauses because *Foster's* application in Hooks's case does not do so.

*Id.* at 320-21. Further, petitioner's arguments have been repeatedly rejected by state and federal courts, including this Court. *Smith v. Brunsman,* 626 F.Supp.2d 786, 793-95 (S.D. Ohio 2009) (application of *Foster* violates neither the due process nor the ex post facto clauses).

Petitioner faced the same sentencing range both prior to and after *Foster.* The trial court's imposition of non-minimum consecutive terms of incarceration after *Foster* did not violate the Due Process or Ex Post Facto Clauses.

Claims seven and eight are without merit.

## CLAIM NINE

In claim nine, Petitioner asserts that he was denied his right to indictment by grand jury, due process, and convicted in violation of the Equal Protection Clause because the indictment failed to

contain the required *mens rea* for the offense of aggravated burglary and aggravated robbery, rendering his convictions void on these offenses and constituting structural error. It appears that, at least portions of Petitioner's claim are procedurally defaulted, not having been raised on direct appeal. Respondent, however, has not raised the affirmative defense of procedural default, but instead argues that the claim lacks any merit. 43-44. Therefore, this Court will consider the merits of Petitioner's claim. See Trest v. Cain, 522 U.S. 87, 89 (1997) (State's failure to raise procedural default normally constitutes waiver of the default); *Gray v. Netherland,* 518 U.S. 152, 166 (1996) (procedural default is normally an affirmative defense that will be waived if not raised).

Petitioner's claim seems to implicate the Ohio Supreme Court's opinion in *State v. Colon*, 118 Ohio St.3d 26 (2008) ("*Colon I*"), which held that with respect to absence of the *mens rea* element for the crime of robbery in the indictment, an appellant does not waive his right to challenge its defectiveness if he did not challenge it at trial. To the extent that Petitioner raises an issue under *Colon I*, this claim presents a matter regarding an alleged violation of state law, and is not appropriate for federal habeas corpus relief. A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir. 1988). " '[E]rrors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus.' " *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003) (quoting *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983) (other citations omitted)). The Court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas

petition." *Miskel v. Karnes,* 397 F.3d 446, 453 (6th Cir. 2005) (internal quotation omitted). Claims of state law error are not cognizable in federal habeas corpus "unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini v. McKee,* 526 F.3d 388, 897 (6th Cir. 2008). Petitioner has failed to meet this standard here.

Petitioner indicates that his indictment was defective under the Equal Protection clause because it contained no *mens rea* as to the charges of aggravated burglary and aggravated robbery. The Constitution, however, does not guarantee a criminal defendant the right to indictment by a grand jury. That is, the Grand Jury Clause of the Fifth Amendment applies only to federal criminal charges and not to state charges. Federal habeas corpus is available only to obtain relief from convictions obtained in violation of the United States Constitution. *See Ervin v. Warden, United States Penitentiary, Lewisburg, Pennsylvania,* 2010 WL 1257900 at 2-3 (S.D. Ohio Jan.12, 2010) (citations omitted)(holding the same); *Thompson v. Anderson*, 2010 WL 4025936 at 10 (N.D. Ohio March 19, 2010) (rejecting *Colon* claim because "claims of error in an indictment are state law claims not cognizable in habeas corpus, unless it can be shown that the defendant was denied fair notice of the charges ... as to adequately prepare a defense").

"It is also well settled in this Circuit that the Constitution does not require any particular state indictment rule. In fact, it does not require an indictment at all if sufficient notice of the charges is given in some other manner." *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984). "[W]hatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Id.* at 369. "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v.*

*Baker*, 316 F.3d 557, 570 (6th Cir. 2002).

The charges of aggravated burglary and aggravated robbery in Petitioner's indictment contain all the essential elements of the offenses. The indictment also sets forth factual information regarding the time of the offense and the victims. The indictment provided Petitioner of fair notice of the charges against him and meets the requisite constitutional standard. Claim nine is without merit.

## CLAIM TEN

In claim ten, Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to file a notice of alibi and present defense witnesses to establish an alibi defense. The state appellate court rejected this claim in relevant part as follows:

> Here, the gravamen of appellant's argument is that he received ineffective assistance of counsel. Appellant claims that his trial counsel did not file a notice of alibi and failed to call three witnesses to assert an alibi.
>
> ***
>
> A defendant alleging ineffective assistance of counsel must demonstrate (1) defense counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) defense counsel's errors prejudiced defendant, depriving him or her of a trial whose result is reliable. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064; *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, cert. denied (1990), 497 U.S. 1011, 110 S.Ct. 3258. In order to secure a hearing on an ineffective-assistance-of-counsel claim in a petition for post-conviction relief, the petitioner bears the initial burden of submitting evidentiary documents that together contain sufficient operative facts which, if believed, would establish counsel substantially violated at least one of the attorney's essential duties to his or her client, and the defendant was prejudiced as a result. *State v. Cole* (1982), 2 Ohio St.3d 112, 114; *Jackson,* syllabus. "Judicial scrutiny of counsel's performance must be highly deferential * * * and a court must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* at 689; *Bradley,* at 142.

We further note that a counsel's decision regarding the calling of witnesses is within the purview of trial strategy, and the failure to subpoena witnesses for trial does not violate counsel's duty to defendant absent a showing of prejudice. *State v. Coulter* (1992), 75 Ohio App.3d 219, 230; *State v. Hunt* (1984), 20 Ohio App.3d 310, 312. Accordingly, courts have traditionally been reluctant to find ineffective assistance of counsel in those cases where an attorney fails to call a particular witness. See *State v. Otte* (1996), 74 Ohio St.3d 555, 565-66; *State v. Williams* (1996), 74 Ohio St.3d 456.

In support of his claim for ineffective assistance, appellant submitted the affidavits of Rita Reynolds (a former girlfriend who had a child with appellant), Joe Reynolds (Rita Reynolds' father), and Fasshon Shivers (appellant's niece). Rita Reynolds was the owner of the vehicle that was used in the commission of the offenses for which appellant was convicted, and, in her affidavit, Reynolds states that she saw appellant's friend, Chuck (last name unknown), driving her vehicle on the evening in question, and knows firsthand that appellant did not use her vehicle that evening. She further avers that appellant was with her, at least in part, during the time the crimes were committed.

Appellant proffered the affidavit of Joe Reynolds for the purpose of demonstrating that the police detectives who investigated the case had perjured themselves at trial. In his affidavit, Reynolds denies that he told the police that his first name was Gregory (as opposed to Joe), as well as that he told the police that appellant had used Rita Reynolds' vehicle that evening.

Fasshon Shivers avers in her affidavit that she lent appellant her car that evening, and also states that appellant was with her, at least in part, during the time the crimes were committed.

Here, multiple factors support the trial court's finding that the above affidavits are not credible. Additionally, the information contained in these affidavits contradict the overwhelming evidence presented at trial-both victims positively identified appellant as their attacker, as well as the vehicle appellant drove that evening during the commission of the offenses.

Upon our review of the record, we conclude that appellant has failed to demonstrate that his counsel's decision not to call the above-mentioned individuals as witnesses at trial was outside the wide range of professionally competent assistance. Consequently, appellant has not established that his counsel's failure to call these witnesses constituted ineffective assistance of trial counsel. Even assuming arguendo that appellant's counsel was deficient in that regard, appellant has failed to demonstrate that, but for his counsel's decision not to present testimony of those individuals, there is a reasonable probability that the result of the proceeding would have been different. Thus, appellant's claim that he received ineffective assistance of counsel lacks merit.

***

Appellant further argues that he was prejudiced by a juror who had viewed a news broadcast about his trial. The evidence presented by appellant in support of this argument is an unauthenticated transcript of a news broadcast, which he claims was viewed by the juror. We find this argument is likewise barred by res judicata and, alternatively, note that such evidence is insufficient to warrant a hearing.

*State v. Jordan,* 2009 WL 1263653, at *3-4.

In his *Motion to Supplement the Record,* Doc. 20, Petitioner has attached what appears to be two defense responses to the State's discovery request in this case, one which reflects the name and address of Fasshon Shivers, and another which does not, and additionally omits the names and addresses of Rita Reynolds and Cynthia McBeth. Petitioner has also attached what he purports to be a copy of the subpoena for Fasshon Shivers, which fails to include her address. Petitioner argues that these documents establish that attorney intentionally deprived him of exculpatory testimony of Shivers. *See id.*

Preliminarily, it does not appear that Petitioner presented this same argument to the state courts and has thereby procedurally defaulted such claim for federal habeas corpus review. In any

event, nothing in the record supports Petitioner's claim that defense counsel intentionally refused to present exculpatory evidence at trial. Further, the record fails to reflect the state appellate court unreasonably applied *Strickland* in concluding that Petitioner could not establish prejudice from counsel's failure to call Reynolds or Shivers as defense witnesses. *See Hughes v. Haney*, 2010 WL 4386551, at *6 (E.D. Ky. Feb. 10, 2010)(noting the limited circumstances under which 2254(d)(1) provides habeas relief)(citations omitted).

According to Fasshon Shivers, Petitioner, who is her uncle, arrived at her grandmother's apartment at 11:30 p.m. He requested to borrow her car so that he could locate Reynolds' Bronco which he had loaned to another person. Petitioner left the apartment at approximately 11:45 p.m., and returned at 2:50 a.m. *Affidavit of Fasshon Shivers, Exhibit 31 to Return of Writ.* Rita Reynolds indicates that she owned the Ford Bronco used by the perpetrator of the crimes charged, but "Chuck" had been driving her car during the time period at issue. She was angry and requested Petitioner to retrieve her car. She was with Petitioner from 3:00 a.m to 3:15 a.m. Sometime after 9:00 a.m. on April 2, 2005, she found the truck parked in front of her apartment. *Affidavit of Rita Reynolds, Exhibit 29 to Return of Writ.* Joe Reynolds, the father of Rita Reynolds, denies telling police that his name was Gregory or that he had any knowledge of who had been driving his daughter's Ford Bronco during the time period at issue. *Affidavit of Joe Reynolds, Exhibit 29 to Return of Writ.*

Both of the alleged victims, however were certain of their identifications of Petitioner as the perpetrator of the crimes charged. *See Trial Transcript*, at 83-84; 203. Both had more than adequate opportunity to observe Petitioner during the robbery and sexual assault. As noted by the state appellate court, they also identified the vehicle that Petitioner drove during commission of the offenses alleged. Shivers and Rita Reynolds, the mother of Petitioner's child, were likely to be

considered as unreliable witnesses in view of their relationship to Petitioner. Detective Foster stated that she did not recall the name of Rita Reynolds' father, and Joe Reynolds' testimony denying he had indicated to police that Petitioner had been driving his daughter's car would have contradicted that of Detective Foster. Finally, as to Petitioner's contention that he was denied effective assistance of counsel because his attorney failed to investigate the effect of a news broadcast indicating Petitioner's prior offense on jurors, Petitioner does not refer to, and this Court is unable to locate, any indication in the record that Petitioner was prejudiced thereby.

For all these reasons and for the reasons addressed by the state appellate court, Petitioner has failed to establish ineffective assistance of counsel under the *Strickland* test.

Claim ten is without merit.

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.** If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation*

will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

 s/ *Elizabeth A. Preston Deavers*   
**Elizabeth A. Preston Deavers**
**United States Magistrate Judge**

**Date:  February 21, 2012**